## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

Case No. 02-80473-CIV-HURLEY/LYNCH

CAROL LICHTERMAN, as personal
representative of the ESTATE OF
HOWARD LICHTERMAN, DAVID
LICHTERMAN as TRUSTEE of the
JEFFREY LICHTERMAN TRUST, as
TRUSTEE of the CAROL LICHTERMAN
RETAINED INTEREST TRUST and
JEFFREY LICHTERMAN,

       Plaintiffs,

v.

PAUL A. MORABITO,

       Defendant/Third-Party Plaintiff,

v.

STEVEN A. UITERWYK,

       Third-Party Defendant.

_____/

## ANSWER AND DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT

The Defendant, PAUL A. MORABITO ("MORABITO"), by and through his undersigned

counsel, hereby files the following Answer and Affirmative Defenses to the Complaint (the

"Complaint") of CAROL LICHTERMAN, as personal representative of the ESTATE OF

HOWARD LICHTERMAN, DAVID LICHTERMAN as TRUSTEE of the JEFFREY

LICHTERMAN TRUST, as TRUSTEE of the CAROL LICHTERMAN RETAINED INTEREST

TRUST and JEFFREY LICHTERMAN (collectively, the "Plaintiffs"):

1.      MORABITO admits the allegations in paragraph 1 of the Complaint for jurisdictional purposes only.

2.      MORABITO is without sufficient knowledge to admit or deny paragraph 2 of the Complaint, therefore it is denied.

3.      MORABITO is without sufficient knowledge to admit or deny paragraph 3 of the Complaint, therefore it is denied.

4.      MORABITO is without sufficient knowledge to admit or deny paragraph 4 of the Complaint, therefore it is denied.

5.      MORABITO is without sufficient knowledge to admit or deny paragraph 5 of the Complaint, therefore it is denied.

6.      MORABITO admits the allegations in paragraph 6 of the Complaint.

7.      MORABITO denies the allegations in paragraph 7 of the Complaint.

8.      MORABITO denies the allegations in paragraph 8 of the Complaint.

9.      MORABITO admits the allegations in paragraph 9 of the Complaint.

10.     MORABITO admits executing the Conditional Guaranty (the "First Guaranty") attached to the Complaint as Exhibit N and admits that such First Guaranty speaks for itself.

11.     MORABITO admits executing the Amended and Restated Conditional Guaranty (the "Second Guaranty") attached to the Complaint as Exhibit O and admits that such Second Guaranty speaks for itself.

12.     MORABITO admits the allegations in paragraph 12 of the Complaint.

13.     MORABITO is without sufficient knowledge to admit or deny paragraph 13 of the Complaint, therefore it is denied.

14.     MORABITO is without sufficient knowledge to admit or deny paragraph 14 of the Complaint, therefore it is denied.

15.     MORABITO denies the allegations in paragraph 15 of the Complaint.

16.     MORABITO is without sufficient knowledge to admit or deny paragraph 16 of the Complaint, therefore it is denied.

17.     MORABITO is without sufficient knowledge to admit or deny paragraph 17 of the Complaint, therefore it is denied.

18.     MORABITO is without sufficient knowledge to admit or deny paragraph 18 of the Complaint, therefore it is denied.

19.     MORABITO is without sufficient knowledge to admit or deny paragraph 19 of the Complaint, therefore it is denied.

20.     MORABITO is without sufficient knowledge to admit or deny paragraph 20 of the Complaint, therefore it is denied.

21.     MORABITO denies the allegations in paragraph 21 of the Complaint.

22.     MORABITO admits the allegations in paragraph 22 of the Complaint.

23.     MORABITO denies the allegations in paragraph 23 of the Complaint.

24.     MORABITO is without sufficient knowledge to admit or deny paragraph 24 of the Complaint, therefore it is denied.

25.     MORABITO denies the allegations in paragraph 25 of the Complaint.

26.     MORABITO denies the allegations in paragraph 26 of the Complaint.

27.     MORABITO is without sufficient knowledge to admit or deny paragraph 27 of the Complaint, therefore it is denied.

3

28.    MORABITO is without sufficient knowledge to admit or deny paragraph 28 of the Complaint, therefore it is denied.

MORABITO denies each and every allegation of the Complaint not heretofore specifically admitted and denies that the Plaintiffs are entitled to the relief requested in the prayer following paragraph 28 of the Complaint.

## First Affirmative Defense

### Prior Breach of Second Guaranty

29.    The Second Guaranty required the Plaintiffs to provide notice to MORABITO of any default by the tenant under the Leases (as defined in the Complaint) and an opportunity to cure such defaults.

30.    The Plaintiffs failed to provide timely notice to MORABITO of the tenant's defaults.

31.    The Plaintiffs failed to provide MORABITO with an opportunity to cure the tenant's defaults.

32.    The Plaintiffs breached the Second Guaranty by failing to give MORABITO timely notice and an opportunity to cure the tenant's breach under the Leases.

33.    MORABITO's performance under the Second Guaranty is excused by the Plaintiff's prior breach.

## Second Affirmative Defense

### Laches

34.    The Plaintiffs first became aware of the tenant's default under the Leases in or prior to October, 2000.

4

35.     The tenant filed a voluntary petition in bankruptcy in October, 2000, and named the Plaintiffs as creditors and notified the Plaintiffs of the bankruptcy.

36.     The Plaintiffs failed to provide MORABITO with notice of the filing of the voluntary petition in bankruptcy, which the Plaintiffs construe as a default under the Leases, until July, 2001.

37.     The nine month delay in providing MORABITO with notice of the tenant's default and filing of the voluntary petition in bankruptcy deprived MORABITO of his right to cure and prevented MORABITO from curing any alleged defaults under the Leases.

38.     MORABITO did not have timely notice that the Plaintiffs would assert a claim under the Second Guaranty due to the filing of the voluntary petition in bankruptcy by the tenant so the Plaintiffs are now barred by laches from doing so.

### Third Affirmative Defense

#### Estoppel

39.     The Plaintiffs failed to provide MORABITO with timely notice of tenant's alleged defaults under the Leases.

40.     The Plaintiffs failed to provide MORABITO with an opportunity to cure the tenant's defaults.

41.     MORABITO was prejudiced by the Plaintiff's failure to furnish timely notice to MORABITO.

42.     Therefore, the Plaintiffs are estopped from recovering damages from MORABITO under the Second Guaranty.

5

## Fourth Affirmative Defense

### Impossibility of Performance

43.    Plaintiffs failed to provide MORABITO with an opportunity to cure the tenant's defaults.

44.    Because the three leases that are the subject of the Complaint were rejected by the tenant in bankruptcy and the tenant's Plan of Reorganization has already been confirmed by the bankruptcy court and because of the Plaintiffs' actions in dealing with the leased premises, Plaintiffs' failure to provide timely notice of tenant's default under the three subject leases made it impossible for MORABITO to cure the tenant's defaults and has rendered MORABITO's performance under the Second Guaranty impossible.

## Fifth Affirmative Defense

### Novation

45.    The Standstill Agreement executed by the Plaintiffs and the tenant modified the terms of the Leases.

46.    The Standstill Agreement constitutes a novation of the Leases which releases MORABITO from any obligations under the Second Guaranty.

## Sixth Affirmative Defense

### Notice Not Given

47.    The Second Guaranty requires the Plaintiffs to provide MORABITO with written notice of tenant's alleged defaults under the Leases and to give MORABITO thirty (30) days within which to cure such defaults.

6

48.     The Plaintiffs failed to provide MORABITO with timely written notice of tenant's alleged defaults.

### Seventh Affirmative Defense

#### Waiver

49.     The Plaintiffs failed to comply with their obligations under the Second Guaranty to provide MORABITO with notice of and an opportunity to cure tenant's alleged defaults.

50.     As a result, the Plaintiffs have waived any rights to seek damages from MORABITO under the Second Guaranty.

### Eighth Affirmative Defense

#### Failure to Mitigate

51.     The Plaintiffs failed to mitigate their damages.

MORABITO, having filed his Answer and Defenses to the Complaint, moves the Court to dismiss the Complaint with prejudice.

### COUNTERCLAIM

MORABITO, by and through his undersigned counsel, hereby files the following Counterclaim against the Plaintiffs, and alleges:

52.     This is an action for declaratory judgment and supplemental relief.

53.     On or about November 14, 1997, Baromitor, Inc. and the Plaintiffs entered into sixteen (16) leases (individually, "Lease" or collectively, the "Leases") of real property.

54.     On or about November 14, 1997, MORABITO executed the First Guaranty.

55.     As of May 1, 1998, MORABITO executed the Second Guaranty, which amended and restated the First Guaranty.  MORABITO's execution of the Second Guaranty was acknowledged on or about August 7, 1998.

56.     On or about August 25, 1998, Baromitor, Inc. assigned the Leases to Direct Automotive Service Centers of South Florida, Inc. ("DASC") with the consent of the Plaintiffs.

57.     Upon information and belief, on or about November 30, 1998, the Plaintiffs and DASC modified the terms of the Leases by entering into a Standstill Agreement (the "Standstill Agreement").

58.     The Standstill Agreement acknowledged the termination of two (2) of the Leases, acknowledged the anticipated termination upon the sale of the real property subject to a third Lease and altered the terms of the remaining Leases.

59.     The Standstill Agreement constituted a novation under the Leases.

60.     On or about October 12, 2000, DASC filed a voluntary petition in bankruptcy.

61.     In the bankruptcy proceeding, DASC rejected the three (3) leases that are the subject of the Complaint and assumed the ten (10) remaining Leases which were then still in effect.

62.     As part of DASC's Plan of Reorganization in bankruptcy, DASC sold all of its assets and assigned the ten (10) remaining Leases (the "Midas Leases") to Midas International Corporation and Midas Realty Corporation, respectively.

63.     Upon information and belief, Plaintiffs consented to DASC's Plan of Reorganization in bankruptcy.

64.     MORABITO has been released from and is no longer bound by any obligations under the Second Guaranty relating to the Midas Leases as a result of the novation of the Leases pursuant

8

to the Standstill Agreement and the further assignment of the Midas Leases to Midas Realty Corporation.

65.     The Plaintiffs contends that MORABITO still has obligations under the Second Guaranty relating to the Midas Leases.

66.     MORABITO is in doubt about his obligations under the Second Guaranty, if any, with respect to the Midas Leases.

WHEREFORE, MORABITO demands judgment declaring that he has no obligations under the Second Guaranty relating to the Midas Leases.

## THIRD PARTY COMPLAINT AGAINST STEVEN A. UITERWYK

MORABITO, by and through his undersigned counsel, hereby files the following Third Party Complaint against Steven A. Uiterwyk ("Uiterwyk") and alleges:

67.     This is an action in indemnification for damages in excess of $15,000.00.

68.     Uiterwyk is an individual who primarily resides in Hillsborough County, Florida.

69.     Uiterwyk is one of the founders and principals of Direct Automotive Service Centers of South Florida, Inc. ("DASC").

70.     In consideration of the assignment of the Leases from Baromitor, Inc. to DASC, on or about August 28, 1998, Uiterwyk and the Tenant, jointly and severally, executed an Indemnification Agreement (the "Indemnification Agreement") in favor of MORABITO. A copy of the Indemnification Agreement is attached hereto as Exhibit A.

71.     Pursuant to the terms of the Indemnification Agreement, Uiterwyk and DASC, jointly and severally, agreed to "indemnify and hold Morabito and Baromitor, or either of them, harmless from and against any and all claims, loss, liability, obligation, damages, costs or expenses(including,

9

but not limited to , reasonable attorneys' fees) and other sums that Morabito and Baromitor, or either of them, may reasonably pay or may become obligated to pay under the Leases or the Guaranty on account of each and every demand, claim, assertion of liability or action in law or equity, arising or alleged to arise, directly or indirectly, out of any action, suit or proceeding . . .in which Morabito and Baromitor, or either of them, may become a party . . . by reason of any claim by any of the several landlords under the Leases that an event of default has occurred under any of the Leases for periods on or after the date hereof . . . ."

72.     MORABITO has been named as a party in the instant action as a result of alleged defaults under certain of the Leases which took place after the date of the Indemnification Agreement.

73.     MORABITO has been required to retain his undersigned attorneys to prosecute this action and has agreed to pay said attorneys a reasonable fee.

74.     All conditions precedent to the maintenance of this action have been performed, waived, excused, or have otherwise occurred.

WHEREFORE, MORABITO respectfully requests this Court enter a judgment in his favor and against Uiterwyk, for all sums that may be adjudged against MORABITO in favor of the Plaintiffs, as well as prejudgment interest, attorneys' fees, costs and expenses, and for such other relief as the Court deems just and appropriate.

Respectfully submitted,

Edward M. Waller, Jr. FBN 106341
FOWLER WHITE BOGGS BANKER P.A.
P. O. Box 1438
Tampa, Florida 33601
Telephone: (813) 228-7411
Facsimile: (813) 229-8313

-and-

Laura E. Anthony, Esquire
120 S. Olive Ave., Suite 208
West Palm Beach, FL 33401
Telephone: (561) 514-0936
Facsimile: (561) 514-0832

-and-

Sidney A. Stubbs, Jr., Esquire
P. O. Box 3475
West Palm Beach, FL  33402-3475
Telephone: (561) 659-3000
Facsimile: (561) 832-1454

Attorneys for Defendant Paul A. Morabito

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a true and correct copy of the foregoing and the

attached exhibit to be served by Federal Express overnight delivery to Amy S. Rubin, RUDEN,

McCLOSKY, SMITH, SCHUSTER & RUSSELL, P.A., 222 Lakeview Avenue, Suite 800, West

Palm Beach, FL 33401, this _5_ day of August, 2002.

_____

Attorney

## INDEMNIFICATION AGREEMENT

THIS INDEMNIFICATION AGREEMENT (the "**Agreement**") is made this 25 ___ day of August, 1998, by and between STEVEN A. UITERWYK ("**Uiterwyk**"), DIRECT AUTOMOTIVE SERVICE CENTERS OF SOUTH FLORIDA, INC., a Florida corporation ("**DASF**"), BAROMITOR, INC., a Florida corporation ("**Baromitor**"), and PAUL A. MORABITO ("**Morabito**").

## W I T N E S S E T H:

WHEREAS, Baromitor is a party to the real property leases referred to and further described in Exhibit A hereto (the "**Leases**");

WHEREAS, under that certain Amended and Restated Conditional Guaranty dated May 1, 1998, a true and correct copy of which is attached hereto as Exhibit A (the "**Guaranty**"), Morabito has guaranteed the Leases;

WHEREAS, Baromitor, Morabito and DASF have entered into that certain Asset Purchase Agreement dated May 14, 1998 (as amended from time-to-time, the "**Asset Purchase Agreement**"), pursuant to which Baromitor has assigned its rights and privileges under the Leases to DASF, and DASF has assumed the obligations of Baromitor under the Leases for periods on and after the date hereof, all pursuant to the several Assignment and Assumption Agreements dated as of even date between Baromitor and DASF (collectively, the "**Assignment and Assumption Agreements**");

WHEREAS, in connection with its consent to the Assignment and Assumption Agreements, and the transactions contemplated thereunder, the several landlords under the Leases have not released Baromitor or Morabito from their respective obligations under the Leases or the Guaranty;

WHEREAS, the parties hereto have agreed to indemnify and hold each other harmless from and against certain liabilities which the other party may have with respect to the Leases or the Guaranty upon the terms and conditions as hereinafter set forth.

NOW, THEREFORE, in consideration of Ten and No/100ths Dollars ($10.00), the mutual covenants made herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto do hereby agree as follows:

1.    Recitals. The foregoing recitals are true and correct and hereby incorporated by reference.

2.    Indemnification by Morabito and Baromitor. Morabito and Baromitor, jointly and severally, do hereby indemnify and hold Uiterwyk and DASF, or either of them, harmless from and against any and all claims, loss, liability, obligation, damages, costs or expenses (including,

but not limited to all reasonable attorneys' fees) and other sums that Uiterwyk or DASF may reasonably pay or may become obligated to pay on account of each and every demand, claim, assertion of liability or action in law or equity, arising or alleged to arise, directly or indirectly, out of any action, suit or proceeding, whether civil, criminal, administrative or investigative, including any appeal thereof, in which Uiterwyk and DASF, or either of them, are or may become a party, or are threatened to become a party, individually or jointly, by reason of any claim by any of the several landlords under the Leases that an event of default has occurred under any Lease solely by reason of any act or omission by Baromitor or Morabito, or any of their respective affiliates.

      3.    <u>Indemnification by Uiterwyk and DASF</u>. Uiterwyk and DASF, jointly and severally, do hereby indemnify and hold Morabito and Baromitor, or either of them, harmless from and against any and all claims, loss, liability, obligation, damages, costs or expenses (including, but not limited to all reasonable attorneys' fees) and other sums that Morabito and Baromitor, or either of them, may reasonably pay or may become obligated to pay under the Leases or the Guaranty on account of each and every demand, claim, assertion of liability or action in law or equity, arising or alleged to arise, directly or indirectly, out of any action, suit or proceeding, whether civil, criminal, administrative or investigative, including any appeal thereof, in which Morabito and Baromitor, or either of them, are or may become a party, or are threatened to become a party, individually or jointly, by reason of any claim by any of the several landlords under the Leases that an event of default has occurred under any Lease for periods on and after the date hereof, except by reason of any act or omission by Baromitor or Morabito or any of their respective affiliates.

      4.    <u>Disputed Rent Deposit</u>. Uiterwyk and DASF agree, jointly and severally, as follows:

      (a)    If DASF shall pay, as Monthly Rent (as defined in the Leases) for any month, an amount that is less than the Base Rent (as defined in the Leases) for such month, or if DASF shall fail to pay, for any month, any portion of Additional Rent due for such month, DASF shall provide written notice thereof to Morabito and Baromitor, concurrently with or prior to such payment of Monthly Rent.

      (b)    If any of the several landlords under the Leases shall dispute the computation of such Monthly Rent or Rent by DASF or otherwise declare any of the Leases to be in default as a result of such computation, DASF shall, pending resolution of such dispute by the written agreement of DASF and the applicable landlord, or by a final non-appealable judgment entered by a court of competent jurisdiction, deposit all unpaid or disputed rental amounts into the registry of the Clerk of the Circuit Court in the County in which the disputed leasehold property is located (and in Palm Beach County Circuit Court if the dispute involves properties in both Broward and Palm Beach Counties).

      (c)    The provisions of Section 4(b) hereof may be enforced by mandatory injunction directing DASF to make the deposits required thereunder. The mandatory injunction may be applied for and obtained by Morabito and Baromitor upon receipt from either the applicable landlord or DASF of notice of monetary default by DASF under the Leases, without prior notice to DASF. DASF hereby recognizes that Morabito and Baromitor would suffer immediate and irreparable injury or damage prior to the time that DASF could be noticed.

5.   **Lease Amendments or Modifications**. DASF hereby agrees that should any material modifications or alterations be made to any or all of the Leases , it will be incumbent upon DASF to secure and obtain a release of the Guaranty by Morabito as to that Lease which is modified or altered. For purposes of this provision, a release or transfer of the interest of DASF in a Lease shall be considered a material change triggering the requirements of this provision.

6.   **Survival**. The obligations contained in this Agreement shall continue in full force and effect for so long as either party hereto shall have any liability or obligation under the Leases or the Guaranty arising after the date hereof.

7.   **Severability**. The provisions of this Agreement are severable and if any provision hereof shall be held to be invalid or otherwise unenforceable, in whole or in part, the remainder of the provisions, or enforceable parts thereof, shall not be affected thereby.

8.   **Governing Law; Forum Selection**. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of Florida, excluding the laws of Florida relating to the resolution of conflict of laws of different jurisdictions. The forum selected for any proceeding or suit related to this Agreement shall be in the Circuit Court of the Fifteen Judicial Circuit, in and for Palm Beach County, Florida, or, if the State Court does not have subject matter jurisdiction, then in the District Court of the United States for the Southern District of Florida, West Palm Beach Division, and each party hereto consents to the foregoing courts' personal jurisdiction over them. This is intended to be a mandatory, and not a permissive, forum selection provision.

9.   **Attorneys' Fees**. In the event that it is necessary for any party to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all costs and reasonable attorneys' and paralegals' fees expended as part of such suit, action, or appeal thereof.

10.   **Binding Effect**. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, personal representatives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Indemnification Agreement as of the date and year first above written.

WITNESSES:

_____          _____(Seal)
                                          STEVEN A. UITERWYK

                                          "UITERWYK"

*[Cross-Indemnification Agreement]*          3

DIRECT AUTOMOTIVE SERVICE
CENTERS OF SOUTH FLORIDA, INC.

By: _____
    Steven A. Uiterwyk, Vice President

"DASF"

_____(Seal)
PAUL A. MORABITO

"MORABITO"

BAROMITOR, INC.

By: _____
    Paul A. Morabito, President

"BAROMITOR"

*[Cross-Indemnification Agreement]*          4

## AMENDED AND RESTATED CONDITIONAL GUARANTY

THIS AMENDED AND RESTATED CONDITIONAL GUARANTY, dated as of the 1st
day of May, 1998 (this "Guaranty"), is executed by PAUL A. MORABITO (herein referred to as the
"Guarantor"), in favor of CAROL LICHTERMAN, as Personal Representative of the Estate of
Howard Lichterman; THE JEFFREY LICHTERMAN TRUST, David Lichterman, Trustee; THE
CAROL LICHTERMAN GRANTOR RETAINED INTEREST TRUST, and JEFFREY
LICHTERMAN (collectively, the "Landlords").

## WITNESSETH:

WHEREAS, Guarantor and BAROMITOR INC., a Florida corporation ("Tenant"), on the
one side, and AUTOLIFE MANAGEMENT CORP., a Florida corporation ("Seller") and JEFFREY
LICHTERMAN ("Lichterman"), on the other side, have entered into that certain Asset Purchase
Agreement dated as of September 28, 1997 ("Purchase Agreement") pursuant to which Seller and
Lichterman have, in connection with the sale of all of the assets of Seller to Tenant pursuant to the
terms of the Purchase Agreement, agreed to cause the Landlords to lease to Tenant fifteen (15)
Midas shop locations owned and operated by the Landlords, as applicable (collectively, the "Leased
Premises") pursuant to sixteen (16) separate leases entered into between the applicable Landlords
and Tenant, as such leases are more particularly described on the schedule attached hereto as Exhibit
"A" (collectively, the "Original Leases"); and

WHEREAS, Guarantor is the Chairman of the Board, a director, and majority shareholder
of Tenant and directly benefits from the lease of the Leased Premises to Tenant pursuant to the terms
and conditions of the Original Leases; and

WHEREAS, Guarantor previously executed a Conditional Guaranty, dated as of November
14, 1997 (the "Original Guaranty") in favor of the Landlords, which execution coincided with the
execution of the Original Leases; and

WHEREAS, in order to induce The Jeffrey Lichterman Trust, David Lichterman, Trustee to
enter into that certain Amended and Restated Lease Agreement, of even date herewith (the
"Amended Lease"), with respect to a portion of the property located at 3855 S. Military Trail, Lake
Worth, Florida (the "Property"), the execution of which Amended Lease is required pursuant to that
certain Settlement Agreement dated April 30, 1998, among Tenant, Seller, Lichterman and
Guarantor, Guarantor has agreed to amend and restate the Original Guaranty to incorporate therein
a guaranty of the obligations of Tenant under the Amended Lease and to reaffirm Guarantor's
obligations under the Original Guaranty; and

WHEREAS, this Guaranty amends and restates the Original Guaranty.

NOW, THEREFORE, for Ten Dollars ($10.00) and other good and valuable consideration,
the receipt and adequacy of which are hereby acknowledged, Guarantor hereby agrees as follows:

1.      Guarantor hereby reaffirms all of Guarantor's obligations under the Original Guaranty, and as to all such obligations this Amended and Restated Conditional Guaranty shall be effective as of and retroactive to November 14, 1997. As of May 1, 1998, this Amended and Restated Conditional Guaranty shall guaranty the obligations of Tenant under all of the Original Leases and the Amended Lease (the Original Leases and the Amended Lease are collectively referred to herein as the "Leases").

2.      Guarantor agrees to and hereby does guarantee (a) the due and punctual payment of all Rent (as such term is defined in each of the Leases) and other charges payable by the Tenant under each of the Leases; (b) the prompt and complete performance all of the other terms, provisions, covenants and agreements on the part of Tenant contained in each of the Leases; (c) the payment to the Landlords of any lost rents and all costs, damages and attorneys' fees incurred by any Landlord arising out of Tenant's failure to pay Rent or other charges under any of the Leases or the failure of Tenant to perform any of the terms, provisions, covenants and agreements contained in any of the Leases, including, without limitation, payment of all costs and attorneys' fees incurred by any Landlord through and including appellate level in connection with any Landlord's enforcement of the terms and provisions of the Leases; (d) payment to the Landlords of any brokerage fees and any other costs, attorneys' fees or expense incurred by any of the Landlords in connection with any reletting or attempts to relet any of the Leased Premises following any default by Tenant; and (e) payment of any amount paid by Tenant to any Landlord which is later set aside in a bankruptcy proceeding. Tenant's obligations for the payment of Rent and other charges under the Leases and all other fees and expenses set forth in (a) through (e) above are herein collectively referred to as the "Lease Obligations". Notwithstanding the foregoing, under any and all circumstances, Guarantor's liability for the Lease Obligations pursuant to this Guaranty shall be limited to the aggregate sum of One Million Dollars ($1,000,000.00).

3.      If Guarantor becomes liable for Rent or other charges owing by Tenant to Landlords, such liability shall not be in any manner impaired or affected hereby, and the rights of Landlords hereunder shall be cumulative of any and all other rights that Landlords may ever have against Guarantor. The exercise by Landlords of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy. Notwithstanding anything to the contrary contained in this Guaranty, or as a result of any payments made by any party hereunder, Guarantor shall not have any right of subrogation, reimbursement, exoneration, indemnification, participation, and/or contribution against Tenant or any other guarantor of the Lease Obligations, any and all such right(s) of subrogation, reimbursement, exoneration, indemnification, participation, and/or contribution being hereby expressly waived and released. Notwithstanding the foregoing, in the event Tenant assigns its interest in any Lease to any unrelated third party in accordance with the terms of the applicable Lease, the foregoing waiver shall be deemed inapplicable as to Guarantor's rights of subrogation, reimbursement, exoneration, indemnification, participation and/or contribution against such unrelated third party in the event Guarantor becomes liable for Rent or any other Lease Obligations arising after the assignment of the Lease to such unrelated third party.

-2-

4.     This Guaranty shall continue for a period of eight (8) years from November 14, 1997; provided, however, that in the event of any default by Tenant under any of the Leases during said 8-year period, this Guaranty shall thereupon continue unabated for the balance of the Lease Term under each of the Leases.

5.     Guarantor and the Landlords acknowledge and agree that, pursuant to the terms of certain Optional Lease Agreements entered into between Midas Realty Corp. ("Midas Realty") and the respective Landlords, Midas Realty has the option to lease any of the Leased Premises from the Landlords on the terms and conditions set forth therein. In the event that Midas Realty elects to exercise its rights under the Optional Lease Agreements to lease all or any of the Leased Premises on such terms and conditions, Guarantor guarantees the payment to the Landlords of all lost rents resulting from any shortfall in the rent payable by Midas Realty under the applicable Optional Lease Agreements from the Rent payable by Tenant under the applicable Leases, subject to the maximum liability of $1,000,000.00 set forth above. If Midas does not exercise its right to so lease any of the Leased Premises, Guarantor shall remain liable for the full amount of the lost Rent and other Lease Obligations for such Leased Premises, subject to the aforementioned $1,000,000.00 limitation.

6.     This Guaranty will not be released by, or in any way affected by: (i) any extensions of time; (ii) indulgences or grace periods which any of the Landlords may extend to or make with the Tenant under any of the Leases; (iii) any waiver by or failure of the Landlords to enforce any provision of the respective Leases; (iv) any assignment of the Leases by the Tenant or by any trustee, receiver or liquidator; (v) any consent which the Landlords may give to any assignment; (vi) the insolvency, bankruptcy, dissolution, receivership, reorganization or lack of corporate power of Tenant or any other party at any time liable for the performance of the obligations of Tenant under any of the Leases; or (vii) the dispossession of Tenant from any of the Leased Premises or the Landlords' exercise of any of their respective rights and remedies against Tenant provided by law or pursuant to the Leases. Notwithstanding (iv) and (v) above to the contrary, Guarantor may be released from liability with respect to a particular Lease if, in connection with the assignment of such Lease, the applicable Landlord expressly releases Guarantor from liability with respect to such Lease, in accordance with the terms set forth in the Lease; provided, however, that any such release of Guarantor with respect to any Lease shall not decrease the amount of Guarantor's liability hereunder with respect to the remaining Leases (i.e. $1,000,000.00).

7.     In the event of default by Tenant in the payment of Rent or any of the other Lease Obligations, or any part thereof, when such obligations become due, the applicable Landlord(s) shall provide written notice of such default to Guarantor, and Guarantor shall have thirty (30) days from receipt of such notice in which to cure such default by Tenant. In the event that Guarantor fails to so cure such default, Guarantor shall, on demand and without further notice of nonpayment or of dishonor, pay the amount due thereon to the applicable Landlords (subject, however, to Midas Realty's right to elect to lease the applicable Leased Premises pursuant to the Optional Lease Agreements, as set forth above). It shall not be necessary for such Landlords, in order to enforce such payment by Guarantor, first to institute suit or exhaust their remedies against Tenant or others

-3-

liable for such Lease Obligations, or to enforce its rights against any security which shall ever have been given to secure such Lease Obligations.

8.    The Guarantor waives any right to require the Landlords to proceed against the Tenant, or pursue any rights or remedies under the respective Leases, or proceed against any security of the Tenant held by any Landlord, or to pursue any other remedy within the power of any Landlord.

9.    Upon the filing of a voluntary petition in bankruptcy or involuntary petition not discharged within thirty (30) days of filing, with respect to the Tenant, any assignment for the benefit of creditors of the Tenant, the Guarantor agrees that notwithstanding any stay, injunction or other prohibition preventing the maturity, acceleration or collection of all or any portion of the Rent and other Lease Obligations, the Rent and Other Lease Obligations (whether or not then due and payable by the Tenant) shall forthwith become due and payable by the Guarantor for purposes of this Guaranty on demand (subject, however, to Midas Realty's right to elect to lease the applicable Leased Premises pursuant to the Optional Lease Agreements, as set forth above). The obligation of the Guarantor to pay the Rent and other Lease Obligations hereunder shall not be affected or impaired by the Landlords' omission or failure to prove their claims against the Tenant. Accordingly, the rights of the Landlords under this Guaranty shall not be affected or impaired by their election to prove their claims or their election not to pursue such claims, as the Landlords see fit, without in any way releasing, reducing or otherwise affecting the liability to the Landlords of the undersigned Guarantor.

10.    Notwithstanding that this Guaranty may have been canceled or terminated, in the event that all or any part of the Rent and other Lease Obligations is paid by or on behalf of Tenant and because of any bankruptcy or other laws relating to creditors' rights, the Landlords must repay any amounts to Tenant or to any trustee, receiver or otherwise, then the amount so repaid shall again become part of the Lease Obligations, the repayment of which is guaranteed hereby, and the undersigned Guarantor shall immediately repay all such amounts to the Landlords.

11.    Guarantor hereby consents to any subsequent modification or amendment of any of the Leases, or to any renewals or extensions thereof, all of which may be made without notice to or consent of Guarantor and without in any manner relieving or releasing Guarantor from liability under this Guaranty.

12.    The liability of the Guarantor hereunder will not be considered to be waived or in any way released by reason of the release or discharge of the Tenant under any of the Leases in any receivership, bankruptcy, winding-up or other landlords' proceedings or the rejection or disclaimer of the Leases in any such proceeding.

13.    No modification of this Guaranty shall be effective unless made in writing, properly executed by Guarantor and each of the Landlords.

-4-

14.    Guarantor shall be bound by this Guaranty and be responsible for the Lease Obligations of Tenant in the same manner and to the same extent (except as expressly set forth herein) as though Guarantor were the Tenant named in the respective Leases.

15.    All of the terms and conditions of this Guaranty shall extend to and be binding on the Guarantor, its successors and assigns, and shall inure to the benefit of and may be enforced by the Landlords and their respective successors in interest and assigns, as well as successors in title to the property on which the Leased Premises are located, including, without limitation, any mortgagee of all or any part of such property.

16.    Guarantor does hereby and shall indemnify and hold Landlords harmless of and from any and all loss or damage of whatsoever kind and from any suits or legal proceedings, including, without limitation, Landlords' legal fees and expenses through all trial and appellate levels, on account of any matters arising out of this Guaranty or in connection herewith on account of any acts or omissions to act by Landlords in connection with this Guaranty, which obligations shall survive termination of this Guaranty, other than any of the foregoing arising out of the gross negligence or willful misconduct of Landlords.

17.    All notices, requests, demands and other communications required or permitted under this Guaranty shall be in writing and shall be deemed to have been duly given, made and received only when (1) delivered (personally, by courier service such as Federal Express, or by other messenger); (2) if transmitted by facsimile transmission, then on the date of transmission as confirmed by the facsimile equipment the recipient location; provided that if transmission is after 5:00 p.m. on any day, then notice shall not be deemed given until the following business day; or (3) or the date mailed, when deposited in the United States mails, certified mail, postage prepaid, return receipt requested, addressed as set forth below:

|  |  |
|---|---|
| To Landlords: | c/o JEFFREY LICHTERMAN<br>5241 Pennock Point Road<br>Jupiter, Florida 33458 |
| with a copy to: | Gary S. Singer, Esquire<br>MOMBACH, BOYLE & HARDIN, P.A.<br>500 East Broward Boulevard, Suite 1950<br>Fort Lauderdale, Florida 33394 |
| To Guarantor: | PAUL A. MORABITO<br>3855 S. Military Trail<br>Lake Worth, Florida 33463 |

-5-

with a copy to:      Mark E. Lehman, Esquire
KERR, KATZ AND ASSOCIATES
1888 Century Park East, Suite 1106
Los Angeles, CA 90067

      Notice by mail shall be by air mail if posted outside of the continental United States. Any party may alter the address to which communications or copies are to be sent by giving notice of such change of address in conformity with the provisions of this Section for the giving of notice.

      18.    This Guaranty and all questions relating to its validity, interpretation, performance and enforcement (including, without limitation, provisions concerning limitations of actions), shall be governed by and construed in accordance with the laws of State of Florida other than conflicting choice-of-laws provisions.

      19.    Guarantor irrevocably and unconditionally: (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Guaranty may be brought, at the option of Landlords, in a court of competent jurisdiction of the State of Florida or any United States District Court; (b) consents to the jurisdiction of each such court in any such suit, action or proceeding; (c) waives any and all personal rights under the laws of any state to object to the laying of venue of any such suit, action or proceeding in the State of Florida; and (d) agrees that service of any court paper may be effected on Guarantor in such other manner as may be provided under applicable laws or court rules in the State of Florida. Nothing contained herein, however, shall prevent Landlords from bringing an action or exercising any rights against any security or against Guarantor personally, and against any property of Guarantor, within any other state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the laws of the State of Florida shall govern the rights and obligations of Guarantor and Landlords hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Florida. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the laws of the State of Florida.

      <u>WAIVER OF TRIAL BY JURY</u>.  GUARANTOR AND LANDLORDS HEREBY MUTUALLY, KNOWINGLY, WILLINGLY, AND VOLUNTARILY WAIVE THEIR RIGHT TO TRIAL BY JURY AND AGREE THAT NO PARTY, NOR ANY ASSIGNEE, SUCCESSOR, HEIR, OR LEGAL REPRESENTATIVE OF THE PARTIES (ALL OF WHOM ARE HEREINAFTER REFERRED TO AS THE "PARTIES") SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEEDING BASED UPON OR ARISING OUT OF THIS GUARANTY OR THE LEASES OR ANY INSTRUMENT EVIDENCING, SECURING, OR RELATING TO THE LEASE OBLIGATIONS OR OTHER OBLIGATIONS EVIDENCED HEREBY OR ANY COURSE OF ACTION, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTION RELATING TO THIS GUARANTY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE ANY

-6-

ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE PARTIES. THE WAIVER CONTAINED HEREIN IS IRREVOCABLE, CONSTITUTES A KNOWING AND VOLUNTARY WAIVER, AND SHALL BE SUBJECT TO NO EXCEPTIONS. LANDLORDS HAVE IN NO WAY AGREED WITH OR REPRESENTED TO GUARANTOR OR TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____          _____
_____          PAUL A. MORABITO


STATE OF _FLORIDA_
COUNTY OF _PALM BEACH_

The foregoing instrument was acknowledged before me this _7th_ day of _August_, 1998, by PAUL A. MORABITO, who ☑ is personally known to me or ☐ produced his driver's license as identification.

_____
NOTARY PUBLIC-State of _____
Print/Type/Stamp Name:
Commission Expiration Date:
Notary Seal:

C:\WP\MRW\Autolife\Guaranty2

LAURA E ARNOFF
My Commission CC378048
Expires Jun. 05, 1998
Bonded by HAI
800-422-1555

-7-

EXHIBIT "A"

Schedule of Original Leases

---

## LEASE AGREEMENTS

1.   That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and CAROLE LICHTERMAN, as Personal Representative of the Estate of Howard Lichterman, as Landlord, for the premises located at 235 E. Sunrise Boulevard, Fort Lauderdale, Florida 33304;

2.   That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and CAROLE LICHTERMAN, as Personal Representative of the Estate of Howard Lichterman, as Landlord, for the premises located at 2212 S. Andrews Avenue, Fort Lauderdale, Florida 33316;

3.   That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and CAROLE LICHTERMAN, as Personal Representative of the Estate of Howard Lichterman, as Landlord, for the premises located at 300 N. State Road 7, Hollywood, Florida 33021;

4.   That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and CAROLE LICHTERMAN, as Personal Representative of the Estate of Howard Lichterman, as Landlord, for the premises located at 1000 N. Federal Highway, Hallandale, Florida 33009;

5.   That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and THE CAROLE LICHTERMAN GRANTOR RETAINED INTEREST TRUST, as Landlord, for the premises located at 4680 S. University Drive, Davie, Florida 33328;

6.   That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and CAROLE LICHTERMAN, as Personal Representative of the Estate of Howard Lichterman, as Landlord, for the premises located at 5040 N. State Road 7, Tamarac, Florida 33319;

7.   That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and THE CAROLE LICHTERMAN GRANTOR RETAINED INTEREST TRUST, as Landlord, for the premises located at 8080 Wiles Road, Coral Springs, Florida 33065;

8.  That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and CAROLE LICHTERMAN, as Personal Representative of the Estate of Howard Lichterman, as Landlord, for the premises located at 2740 S. Dixie Highway, West Palm Beach, Florida 33405;

9.  That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and CAROLE LICHTERMAN, as Personal Representative of the Estate of Howard Lichterman, as Landlord, for the premises located at 1401 Broadway, Riviera Beach, Florida 33404;

10. That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and THE JEFFREY LICHTERMAN TRUST, David Lichterman, Trustee, as Landlord,  for the premises located at 7527 W. Oakland Park Boulevard, Lauderhill, Florida 33319;

11. That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and THE JEFFREY LICHTERMAN TRUST, David Lichterman, Trustee, as Landlord,  for the premises located at 431 N. State Road 7, Plantation, Florida 33317;

12. That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and JEFFREY LICHTERMAN, as Landlord,  for the premises located at 2253 N. Military Trail, West Palm Beach, Florida 33409;

13. That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and THE JEFFREY LICHTERMAN TRUST, David Lichterman, Trustee, as Landlord, for the premises located at 3855 S. Military Trail, Lake Worth, Florida 33463;

14. That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and THE JEFFREY LICHTERMAN TRUST, David Lichterman, Trustee, as Landlord, for the premises located at 395 N. Federal Highway, Delray Beach, Florida 33483;

15. That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and JEFFREY LICHTERMAN, as Landlord, for the premises located at 26 Old Dixie Highway, Jupiter, Florida 33458;

16. That certain Lease Agreement dated as of November 14, 1997, by and between BAROMITOR INC., a Florida corporation, as Tenant, and THE JEFFREY LICHTERMAN TRUST, David Lichterman, Trustee, as Landlord, for the 6,000 square foot building located on the west (rear) portion of the Property located at 3855 S. Military Trail, Lake Worth, Florida 33463.

C:\WPM\LICHTERM\SALE-ALAN1-LEASEIND.wpd
December 8, 1997